10L 643
2pi 228

'THE MAYOR AND CITY COUNCIL OF NASHVILLE *v.*
TONEY AND WIFE.

1. MUNICIPAL CORPORATIONS. Assumpsit upon an implied promise may
be maintained against a municipal corporation in a case where it has
availed itself of the services and property of the plaintiff in the care
and treatment of the indigent sick of the city.

2. SAME. *Statute of limitations. New promise.* A municipal indebtedness
barred by the statute of limitations, cannot be revived by the indi-
vidual acknowledgment and promise of the mayor.

3. SAME. *Corporate powers. Ordinances.* The powers of a municipal cor-
poration can only be exercised by the governing legislative body of
such corporation, or by other agents of such corporation, in pursu-
ance of authority given from such governing body in the form of an
ordinance or legislative enactment, in pursuance of powers granted in
the charter.

---

### FROM DAVIDSON.

---

Appeal in error from the Law Court of Nashville.
J. C. GUILD, J.

BATE & WILLIAMS and J. D. BRIEN for Toney.

JOHN LELLYETT and W. K. McALISTER, JR., City
Attorney, for Nashville.

COOKE, Sp. J., delivered the opinion of the court.

The plaintiffs below sued the defendant for eight
thousand dollars, for services rendered the city, by Mrs.
Amelia Toney, the matron of St. Vincent's Hospital,
for nursing, maintaining and taking care of the charity

patients of the city. The summons issued December 27, 1875. The declaration alleged, that the defendant contracted with plaintiff, Mrs. Toney, to pay her one dollar per day for the board, nursing, etc., of each charity patient of the City of Nashville, which was sent to said Hospital; and that in pursuance of said contract, the plaintiff did board, attend to and nurse said patients; but that the defendant failed to pay for the same for the months of April, May and June of 1869, amounting in the aggregate to $1,759.25, and that the defendant had, within six years next before the institution of the suit, promised to pay said sum with interest. That for the months of October, November and December, 1868, and January, February and March, 1869, the defendant gave, in partial payment to plaintiff for said services, checks upon the City of Nashville, which were then at a discount, and promised and agreed to pay the difference between the market value of said checks and the amount for which they called; and which difference amounted to $1,271.19; and that defendant has within six years, etc., promised to pay the same with interest. And that defendant in the year 1873, when the cholera was prevailing, employed the said plaintiff, Amelia, to furnish the charity patients with attendance, board, nursing, etc., and agreed to pay the plaintiff therefor, whatever her services in the premises were reasonably worth; and avers that these services were reasonably worth $2,000, and that defendant has failed to pay the same. The declaration also contains a common count in *indebitatus assumpsit* for work and labor done, etc.

The defenant pleaded: 1st, That it did not prom-ise or contract as alleged in the first count of the declaration; 2d, *Nil debet;* 3d, Payment; 4th, The statute of limitations of six years; 5th, That the con-tract alleged in the first count was usurious, to the extent of $1,271.19; and 6th, An informal plea of set-off. To the 4th plea the plaintiff replied, a new promise within six years; and also filed a replication traversing the plea of set-off, and took issue upon the others.

There was a verdict and judgment in favor of the plaintiff, for $6,700. A motion for a new trial was overruled, and the defendant appealed.

There is not only ample testimony in the record to support the verdict, but, so far as we can see, the demand of the plaintiff appears to be. just and meri-torious. Whether the verdict and judgment can be permitted to stand, depends upon whether or not there is reversible error contained in the record.

The charter of the city provides, that the mayor and aldermen shall have the power, by *ordinance,* within the city, to appropriate money and provide for the payment of the debt and expenses of the city; also to establish hospitals and make regulations for the government thereof. On the 26th day of December, 1867, they passed an ordinance *reciting* that, "The Faculty of the University of Nashville, with commend-able zeal and enterprise, have at their own expense, procured a suitable building on south College street, near said University buildings, and have named it St. Vincent's Hospital, in which they propose treating al

charity patients freê of charge; they further propose to furnish all other articles needed by said charity patients, such as lights, fuel, bedding and proper food, charging the city one dollar per day for each charity patient, as long as he may be an inmate of said institution. And whereas such an institution seems eminently deserving of encouragement and assistance;" providing, "That the expenses of the fuel, lights and maintenance required by such charity patients of the city, be defrayed by the Faculty of said University, as they propose; and that the city pay said faculty at the rate of one dollar per day, for each charity patient of the city treated in said hospital,"

The testimony showed fully that at the time of this arrangement and the passage of the above ordinance, that the faculty had constituted the plaintiff matron of said hospital, and agreed with her that she was to furnish, at her own expense, the nursing, sustenance and attention, etc., specified in said ordinance (except medical attention, which the faculty was to furnish gratis), and was to receive the entire compensation from the city therefor; and that this arrangement was known to the authorities of the city at the time they passed the ordinance, and that it was passed in view of the same. And that they traded, dealt with and paid her as the contracting party, for furnishing said nursing, supplies, attention, etc., to said patients under said ordinance.

On the 21st of January, 1868, the joint board of the city council passed the following resolution: "Whereas the *Matron* of St. Vincent's Hospital has

gone to great expense to make the patients of the corporation comfortable; and whereas the city council agreed, in a recent act passed, that they would pay said *Matron* one dollar per day for the maintenance of each patient while in the hospital, and furnishing said patients with proper medical treatment; and whereas such maintenance and medical treatment cannot possibly be had for a less cost than one dollar per day in *current* funds: Therefore be it resolved, that the *St. Vincent's Hospital* be hereafter paid (as per act referred to stipulates), one dollar per day for the maintenance and medical treatment of each pauper patient in said hospital, in current funds, or corporation checks. allowing the discount."

And on July 27th, 1870, they passed the following resolution: " Resolved · by the mayor and city council, that Mrs. Toney be allowed seventy-five cents per day for each charity patient at St. Vincent's Hospital."

And on the 7th of June, 1873, they passed the following resolution: " That the mayor, in conjunction and with the advice of a sanitary commission of physicians, just appointed by the mayor, be and they are hereby authorized to adopt and carry out such measures, and employ such means, as may be deemed necessary to maintain the health of the city, and to prevent the further spread, if possible, of ·the cholera."

The testimony showed, that a large number of cholera patients were sent by the mayor and sanitary commission to the hospital to be nursed and taken care of, etc., by the plaintiff, who furnished them nurses, bedding, care, boarding, lodging, medicines,

brandies, wines, etc., to a large amount and of considerable value.

It was first objected by defendant, and the court was requested to charge the jury that there was no privity of contract between the plaintiff and the defendant; that the contract, whatever it was, was between the Faculty of the University and the defendant; and that the plaintiff was not entitled to maintain the action. This the court declined, but charged that under the resolutions of the city council above referred to, the plaintiff was entitled to maintain the action in her own name as matron of the hospital, and recover whatever sum the proof should show she was entitled to. This charge, in view of the testimony, was correct, and might have gone further and stated, that if the defendant had made no other provision for taking care of its charity patients, and knew that the plaintiff was taking care of and supporting them for and on account of the city, and accepted and received the benefit of such services, she could recover, under the common count in assumpsit for work and labor, etc., whatever the same was reasonably worth, even if there was no special contract existing with the plaintiff: 2 Kent's Com., 291; 9 Cold., 453; 42 N. H., 125; 13 Ill., 371; Dillon on Mun. Cor., sec. 385.

In the progress of the trial, the court permitted the plaintiff to prove by a number of witnesses, over the objection of the defendant, that the mayor of the city (and perhaps some member of the city council), had within six years next before the institution of the suit, recognized the plaintiff's demand for the items of

keeping and nursing patients for the months of April,
May and June, 1869, and for the difference between
city checks and current funds, for the months of Oc-
tober, November and December, 1868, and January,
February and March, 1869, as valid and subsisting
demands against the city, and had promised to pay the
same as soon as there was money in the city treasury
sufficient to do so; and that there had been between
the times of making said promises and the bringing
of the suit, large amounts of money in the treasury,
more than sufficient to have paid the same. And in
his charge to the jury on this subject, the court said:
"If this sum was due and unpaid, the plaintiff would
be entitled to recover it, if not barred by the statute
of limitations of six years. It would be barred, if
the plaintiff has failed to prove that the corporation,
within six years next before the bringing of the action,
recognized the justice of this claim, and expressly prom-
ised to pay it, as soon as funds came into the treasury.
If a promise was made to pay it within six years
next before the bringing of this suit, it would not be
barred. While it is true, that the mayor or officers
of the corporation, would not be authorized to contract
a new or important debt against the corporation, yet
if you find that the mayor of the corporation was ap-
plied to frequently in this case, and that the claim
was presented to him and asked to be paid, and the
amount and nature of it was stated, and the mayor
said that it was just, and promised that it would be
paid so soon as moneys came into the treasury to pay
it; and you find that large quantity of funds came

into the treasury after that, and was paid over to creditors, before the bringing of this action, then the statute would only run from the date of such express promise to pay. And six years would have to run out from that time, to form the bar. Such promise would not create a new debt, but would merely keep alive an old one."

This instruction, as well as the admission of the testimony above referred to, is assigned as error, and makes the question: Had the mayor of the city the power to bind the defendant by his promise, so as to take the case out of the statute of limitations, or prevent its forming a bar to plaintiff's right of recovery upon this branch of her case?

It is provided by the charter, sec. 6, that "The mayor and aldermen" (now council) "shall have power by *ordinance* \* \* to appropriate money and provide for the payment of the *debt* and expenses of the city." And by an ordinance of the city it is provided, "That the mayor shall, at the commencement of the municipal year, appoint a standing committee of three, who shall be known as the committee on improvements and expenditures. That all propositions having any relation to improvements or expenditure of money, or incurring any liability, shall be referred to said committee, whose duty it shall be to inquire into the character of the improvement, proposed expenditure, or *liability*, and the immediate necessity of the same, and make their written report to the city council, giving the result of their investigation, and their reasons for the approval or rejection of said propositions. That no person, whether

a member of the city council or officer of the corporation, shall order, contract, or do anything, whereby an expenditure of money is the consequence, or liability is to be incurred, unless authorized by existing laws, or ordered by the city council; and the recorder is hereby required to issue no check upon the treasury, in his official character, for money, unless by authority of the city council, or in pursuance of existing laws of the corporation."

We have not been referred to any authority, either in the charter, ordinances or resolutions of the city, and can find none, which authorizes or empowers the mayor, by his individual or sole promise, to bind the city for any purpose, and hence we presume there is none. And as will be seen by the provisions of the above cited ordinances, he is prohibited from doing so, unless authorized by existing laws, or by order of the city council.

It is scarcely deemed necessary to cite authorities to show, that without such authority he has no power to do so. In the case of *Mayor and City Council of Nashville* v. *J. G. Fisher et al.*, decided at Nashville, 1875, unreported, this court, Judge Freeman delivering the opinion, says: "We hold the principle to be sound, as stated by the Supreme Court of New Jersey, *Sachem* v. *Seymour*, 24 N. J. R., 153, that the powers of a municipal corporation can only be exercised by the governing, legislative body of such corporation, or we may add, by other agents of such corporation, *in pursuance of authority* given from such governing body, in the form of an ordinance, or legislative enactment

of such body, or in pursuance of powers granted or conferred in the charter by the Legislature." See also *Mayor, etc.* v. *Hagan,* 9 Baxt., 495; *Belote* v. *Wynne,* 7 Yer., 341; *Muse* v. *Donelson,* 2 Hum., 166. While we have no doubt but that these promises had the effect to lull the plaintiff into security, and may cause a loss which to her may be serious, yet it is clear that these promises of the mayor were unauthorized and not binding on the defendant, and hence inoperative to prevent the bar of the statute. And for this error in the charge of the court and in the admission of the testimony as above indicated, we are compelled to reverse the judgment and grant a new trial.